James B. STANLEY, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

No. 78–8141–CIV–JAG.

United States District Court, S.D. Florida, N.D.

Oct. 15, 1982.

Opinion Vacated Nov. 9, 1982.

See 552 F.Supp. 619.

John F. Romano, Cone, Wagner, Nugent, Johnson & McKeown, West Palm Beach, Fla., for plaintiff.

Alan I. Mishael, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the Defendants' Motion to Dismiss or in the alternative Motion for Summary Judgment. The Court has considered the motion, and has heard extensive oral argument by counsel.

The case involves the secret administration of LSD to members of the U.S. Army as part of an Army experiment.

In 1958 plaintiff was a Master Sergeant in the United States Army stationed at Fort Knox, Kentucky. Plaintiff volunteered to participate in a program at the Chemical Warfare Laboratories at the Army Chemical Center, Aberdeen Proving Grounds, Edgewood Arsenal, Maryland. The purpose of the program allegedly was the development and testing of methods of defense against chemical warfare attack, including the testing of various gas masks and protective clothing.

During interviews with military and civilian personnel at Edgewood Arsenal, plaintiff was asked to drink a clear liquid which, unknown to him, contained lysergic acid diethylamide (LSD). Plaintiff unknowingly ingested this drug on four separate occasions. Plaintiff alleges that as a result he experienced severe reactions including hallucination. When he returned to active duty at Fort Knox a month later he maintains he was in an altered behavioral and emotional state.

Plaintiff was discharged from the Army in 1969 still unaware that he had ingested LSD years earlier. In December, 1975, he received a letter from the Department of the Army, Walter Reed Army Medical Center, soliciting his participation in a follow-up study of the subjects of the 1958 LSD experiments. It was then that he first became aware that he had secretly been given LSD in 1958 by Army personnel.

In his Amended Complaint, plaintiff alleges that the defendants deliberately gave him false information regarding the true nature of the program he volunteered to participate in. He further alleges that the Defendants were grossly negligent in failing to debrief and inform him of the 1958 episode upon his discharge, and in failing to continue to monitor his condition subsequent to his discharge. Plaintiff seeks damages for this allegedly negligent conduct.

The original complaint in this case was based on the same set of facts and consisted of claims brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.* The question of this court's jurisdiction over those claims was first raised on a motion for summary judgment. This court granted said motions on the basis of the

doctrine announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The *Feres* doctrine provides that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

Upon review of that ruling, the Fifth Circuit concluded that this court's application of the *Feres* doctrine to preclude the claims brought in the original complaint was correct, but that this court improperly granted the motion for summary judgment. *Stanley v. CIA,* 639 F.2d 1146 (1981). Rather, the Fifth Circuit held that the proper disposition of the case was dismissal of the complaint for lack of subject matter jurisdiction. The Fifth Circuit then remanded the case for the trial court's consideration of any amendment that the plaintiff might offer to cure the jurisdictional defect. *Id.* at 1159–60.

The first question now presented upon the Defendant's Motion to Dismiss the Amended Complaint is whether Plaintiff's Amended Complaint states a cause of action under the Federal Tort Claims Act (FTCA) *not* barred by the *Feres* doctrine.

The defendant argues that the Fifth Circuit, in *Stanley,* precluded any question of whether Stanley could allege a cause of action under the FTCA.

■ Although the court finds that the Fifth Circuit left the door open to Stanley to amend his complaint to allege facts sufficient to support a post-discharge tort theory, (so his claims could fall outside the *Feres* doctrine pursuant to *Thornwell v. United States*) the Court finds that the plaintiff has failed to allege a distinct tort arising entirely post-discharge. See *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979). (*Feres* doctrine does not bar claims arising from conduct occurring entirely post-discharge).

The court reaches this conclusion by examining the reasoning of the Fifth Circuit and its reliance on *Schnurman v. United States,* 490 F.Supp. 429 (E.D.Va.1980). *Stanley,* 639 F.2d at 1155.

In *Schnurman,* the plaintiff suffered injuries as a result of his exposure to toxic mustard gases during a United States Navy experiment in which he participated while an apprentice seaman. The *Schnurman* court granted the defendant's renewed motion to dismiss at the end of the trial finding (a) that the plaintiff's injuries were not shown to be caused in any way by the Government's failure to treat plaintiff subsequent to discharge; or (b) by the Government's failure to warn him of the true nature of the gas to which he had been exposed. There was no testimony that his injuries were in any way aggravated or multiplied by the Government's alleged post-discharge negligence, or that follow-up treatment could have avoided any long-term effects of the exposure. *Schnurman,* 490 F.Supp. at 437. The *Schnurman* court found no evidence of any causal connection between the plaintiff's injury and the Government's alleged *post-discharge* negligence, and held that to allow recovery for the defendants' failure to monitor and treat injuries which resulted from an *in-service* tort (for which there is no recovery) would leave very little of *Feres* immunity. *Id.*

Plaintiff Stanley's Amended Complaint alleges that "Upon and subsequent to Plaintiff's discharge from the army in 1969 Defendants were grossly negligent in failing to debrief and inform Plaintiff of the [LSD experiment] and in failing to continue to monitor his condition . . ." and that he suffers continuing and permanent psychological injuries as a result of Defendant's negligent failure to debrief him and to continue to monitor his condition. The Plaintiff does not causally connect the injuries resulting from the experiment with any conduct occurring *in its entirety* after Plaintiff's discharge. Although Plaintiff omits allegations of predischarge negligence in his Amended Complaint the court is not persuaded that the acts constituting the alleged negligence were separate and distinct from any acts occurring before discharge, so as to give rise to a separate actionable tort not barred by the *Feres* doctrine.

The court, therefore, concludes that plaintiff's claims under the FTCA must be dismissed for lack of subject matter jurisdiction based upon the Fifth Circuit's opinion in *Stanley,* including its reliance on *Schnurman v. United States.*

The Amended Complaint also alleges constitutional claims based on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the court recognizes that a *Bivens* cause of action is available against individual officers and agents of the Government, the doctrine of sovereign immunity bars an action against the United States itself.

■ The question of whether a *Bivens* cause of action can be brought against the Government was addressed by the United States Court of Appeals for the Third Circuit in *Jaffee v. United States,* 592 F.2d 712 (3d Cir. 1979), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). In *Jaffee,* plaintiff claimed damages for injuries suffered as a result of radiation exposure while serving in the United States Army when assigned to participate in nuclear testing. The court, after concluding that Jaffee's claim could not be brought under the FTCA because of the *Feres* doctrine, proceeded to consider whether a cause of action could be brought against the Government pursuant to *Bivens.*

> Alternatively, Jaffee urges that this court can create an exception to the doctrine [of sovereign immunity] in order to grant relief for deliberate violation of constitutional rights. For authority supporting this argument, he turns to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and to *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Bivens* the Court recognized an implied cause of action for damages against federal officers who had violated the fourth amendment. *Butz* held that certain federal executive officials did not enjoy an absolute immunity for the damage suits permitted by *Bivens.* From these cases Jaffee tries

to extract the principle that "the applicable common law doctrine of governmental immunity must yield to the paramount necessity of vindicating constitutional guarantees." But the suits in *Bivens* and *Butz* were against individual federal officers and not against the United States. Because Jaffee has sued the Government itself, *Bivens* and *Butz* do not afford him a traversable bridge across the moat of sovereign immunity.

*Jaffee,* 592 F.2d 712, 717 (footnotes omitted). This court finds, therefore, that the plaintiff's *Bivens* claims herein cannot be maintained against the Government itself.

The Defendants' Motion to Dismiss also attacks the *Bivens*-type claims brought against the Unknown Individual Federal Agents and Officers. Defendants first argue that fictitious individual defendants are not proper parties. This argument is without merit. *See, e.g., Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir. 1981), *cert. denied,* ⎯ U.S. ⎯, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982).

Defendants next argue that even if plaintiff has properly pled a *Bivens* cause of action against individual agents and officers, such claim is barred by the *Feres* doctrine.

The *Feres* case itself dealt exclusively with claims brought under the Federal Tort Claims Act. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. It did not address *Bivens*-type actions.

■ At least one United States Court of Appeals has held that although a claim against the Government under the FTCA may be barred by the *Feres* doctrine, a *Bivens* claim against individuals arising from the same set of facts is not barred by *Feres. See Wallace v. Chappell,* 661 F.2d 729 (9th Cir. 1981). This court likewise holds that the *Feres* doctrine does not bar plaintiff's claims against the individual agents and officers.

The defendants also attack the Amended Complaint on the ground that the claims against the individual defendants are time-barred. They contend that the applicable statute of limitations, the four-year period for actions involving negligent and intentional torts, Fla.Stat. § 95.11(3)(a) and (o), began to run in 1975 when plaintiff was first informed that he had been given LSD. Because the original complaint did not name individual defendants, defendants argue that the Amended Complaint cannot relate back to the original complaint as regards the individuals.

█ It is unnecessary for this Court to address the issue of relation-back. At the time plaintiff filed his original complaint the Fifth Circuit held a restrictive position as to causes of action brought pursuant to *Bivens*. *Stanley v. CIA,* 639 F.2d at 1156 n. 12; *see Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978) (no right of action may be implied from the Due Process Clause of the fifth amendment). Thus, until the Supreme Court reversed the Fifth Circuit in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), Stanley had no *Bivens* cause of action. As a result, the claims against the individuals in this case, which are based primarily on the Fifth Amendment, did not accrue until the Supreme Court's decision in 1979. It follows, therefore, that the claims against the individual officers and agents set forth in the Amended Complaint are not time-barred. *See United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353 (5th Cir. 1972) (Because appellant had no reasonable probability of successfully prosecuting his claim prior to the enunciation of a new rule by the United States Supreme Court, for statute of limitations purposes the cause of action accrued on the date of the Supreme Court's decision); *United States v. LePatourel,* 593 F.2d 827 (8th Cir. 1979).

Finally, defendants argue that plaintiff's claim does not rise to one of constitutional magnitude, and counsels the court to exercise hesitation in recognizing a *Bivens* cause of action. Defendants characterize plaintiff's claim as "nothing more than a medical malpractice action based on lack of informed consent and negligent follow-up care."

The Supreme Court of the United States has recognized that there is a constitutional right to be free to decide for oneself whether to submit to drug therapy. *Mills v. Rogers,* —— U.S. ——, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). Although it is difficult to locate the exact constitutional source of this right, courts have recognized it as a liberty or privacy interest associated with the penumbral right to privacy, bodily integrity, or personal security. *See Mills v. Rogers,* —— U.S. at —— & n. 7, 102 S.Ct. at 2447 & n. 7. This right to be free from the unwanted administration of drugs has also been associated with First Amendment rights because "the power to produce ideas is fundamental to our cherished right to communicate ..." *See Mills v. Rogers,* —— U.S. at —— n. 3, 102 S.Ct. at 2446 n. 3.

█ This court views the conduct alleged in the Amended Complaint as an egregious intrusion on the most precious right protected by the Constitution—the right not to be deprived of life, liberty or property without due process of law. The surreptitious administration of LSD to an unwitting serviceman who believes he is involved in a project important to the development of defenses to chemical warfare constitutes a violation of the rights of privacy and bodily integrity, and of the right of an individual to control his mind, his private thoughts and his intellectual process.

It is ludicrous to suggest that such an intrusion upon a person by the federal government does not rise to a claim of constitutional magnitude, but is merely a medical malpractice claim.

In *Mills v. Rogers, supra,* the Supreme Court recognized that the unwanted administration of drug therapy by a state hospital to mental patients warranted constitutional scrutiny to determine whether the state's competing interests outweigh the individual's constitutionally protected interest in being free from such conduct. —— U.S. at ——, 102 S.Ct. at 2447. The deplorable nature of such conduct is multiplied by the

facts in this case. The LSD was administered to the plaintiff by agents of the same government that guarantees the plaintiff his personal right to be free from such conduct, and whose constitutional duty it is to protect such personal interests. Moreover, it is the same government that lured the plaintiff into believing he was playing an important role in the defense of that government, and for which he presumably was acting out of an extreme sense of loyalty and duty. The conduct alleged in this case would shock—if not outrage—the conscience of any court, and is most certainly protected against by the Constitution of the United States.

Although the Court recognizes that the military relationship between Stanley and the officers and agents involved in the LSD experiments must be weighed against the individual's constitutional rights in order to determine whether a cause of action is maintainable in this case, the court cannot legally or morally find that relationship sufficient to overcome the liberty and privacy rights guaranteed by the Constitution. To do so would deprive the plaintiff and all military personnel similarly situated of any recourse against the government or its agents, and thus would deprive them of their most fundamental civil rights.

In summary, it is ORDERED AND ADJUDGED as follows:

1. That as to the claims against the Government brought under the Federal Tort Claims Act, the Motion to Dismiss be and the same is hereby GRANTED.

2. That as to the claims against the Government brought pursuant to *Bivens,* the Motion to Dismiss be and the same is hereby GRANTED.

3. That as to the claims against the UNKNOWN INDIVIDUAL FEDERAL AGENTS AND OFFICERS, the Motion to Dismiss be and the same is hereby DENIED.

It is FURTHER ORDERED AND ADJUDGED that, pursuant to 28 U.S.C. § 1292(b), the Court finds that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Furthermore, should either of the parties file a Notice of Appeal of this Order, there shall be a stay of the proceedings in this cause until further Order of the Court.